M. L. & R. J. HOLMES *v.* SACKETT, BELCHER & COMPANY.

Since the act of 1866–67, c. 63 the defendant in an original attachment may replevy and plead without giving a replevy bond.

(*Bunting* v. *Wright*, Phil. 295, and *McKay* v. *Ray*, *ante*, 47, cited and approved.)

ORIGINAL ATTACHMENT, before *Gilliam J.*, at Spring Term 1868 of the Superior Court of ROWAN.

The attachment was returnable to Fall Term 1867, and at the next term, after publication, the defendants appeared by attorney and moved to be allowed to plead *without* executing a replevy bond.

His Honor declined to grant the motion, and the defendants appealed.

*Boyden & Bailey*, for the appellants.

The exception in the Act of 1866–67, c. 63, applies only to residents of this State who are about to remove themselves or property beyond the limits of this State. Then, had the plaintiffs sued the defendants while commorant here, by personal service, they could only have done so by writ of summons. What reason can be assigned why greater right should be accorded to plaintiffs and heavier restrictions imposed upon defendants, when sued by the extraordinary process of attachment?

Our attachment has never been regarded as other than what it was under the custom of London, a substitute for the ordinary process where, for certain reasons esteemed sufficient by the Legislature, the ordinary process could *not be served*, *Hightower* v. *Murray* 1 Hay 21. The object of the attachment, shown by the case and the whole tenor of the decisions as well as by the very language (" so as to compel the said A. B. to appear and answer," &c.,) was only to compel appearance; this law originally formed a part of the " Court law," and is certainly in *pari materia* with other acts touching the process of the Courts; wherefore they should be " taken as one system, and be so construed." *State* v. *Melton*, Busb. 49.

Then, the attachment and bail laws formed parts of "one system," and accordingly it has been held under the old system when bail might be claimed, that the replevy bond was nothing but a bail bond; that an action of debt would not lie on it, but only a *sci. fa.* *Summers* v. *Parker*, N. C. T. R., 147; that the sureties to the bond might surrender the principal in their own discharge. *Hightower* v. *Murray, supra.* Other analogies are declared in *Houston* v. *Porter*, 10 Ire., 134; *Gorman* v. *Barringer*, 2 D. & B. 502; *Bickerstaff* v. *Dellinger*, Conf. Rep. 299.

It is thus shown that a replevy bond was required under the old system, in order to harmonize the process with the ordinary process—to require of the defendant only what would have been required of him had he been sued by the ordinary process, and not to give additional rights by the process of attachment, as in some of the New England States.

The object of the process is to compel or induce appearance, under the same restrictions and no more as would be applied to a defendant in such ordinary process as might have issued against *him*.

Upon the foregoing principles is based the maxim, *leges posteriores priores contrarias abrogant*, which as is submitted, applies equally whether the repugnancy consists in the terms of the acts, or results from their construction and effect, so that whenever an act required by a former law becomes a vain and idle ceremony by virtue of a subsequent law, the former law *quoad hoc* is repealed, for the maxim is *Lex not cogit*, &c. In accordance with this view, this Court has held that where the act in question has put an end *to the object of litigation*, the suit itself must end. *Bunting* v. *Wright*, Phil. 295. So in the principal case, suppose a bail bond to be required,—*Cui bono?* What could it avail the plaintiff? What legal purpose does it carry out? What obligation does it impose?

*Merrimon, contra.*

1. The Act abolishing imprisonment for debt does not by its *terms* embrace proceedings by *attachment*, but only certain classes of actions begun by "*original writ*," not as understood in the English law, but as commonly understood in this State. It has never been understood here that proceedings by "*original writ*," embraced proceedings by *attachment*,—indeed the latter is generally understood to be the reverse of the former, and is in contradistinction to it.

2. Proceedings by attachment are not only not included by the plain words of this Act, but the Act taken altogether shows that it was not intended to embrace them, for it is provided, that if the plaintiff, proceeding by "*original writ*" in any action of debt, assumpsit or covenant, shall make oath in writing that the defendant is about to remove himself or property out of the State, then he shall have *bail*. This shows that the *policy* and spirit of the statute do not embrace attachment proceedings, nor was it so intended.

3. If the Court give the Act the construction contended for, it opens wide the door for fraud to non-resident debtors; they may carry off their property beyond the jurisdiction of our Courts, in defiance of their creditors, and the latter have no relief. The present case illustrates the truth and force of this view. It would be monstrous to say the Legislature intended so to provide, and it is asking the Court to go too far to so declare, *by a rule of construction*

PEARSON, C. J. In this case the defendants seek to carry the doctrine "*cui bono?*" (Why require a useless act?) farther than is done in either *Bunting* v. *Wright*, Phil. 295, or *McKay* v. *Ray*, ante, 47. It now becomes necessary to construe the Attachment Act, Rev. Code, ch. 7, in connection with the Act of 1866–'67, and to determine how far the former is affected by the latter.

The above cases, however have cleared off the ground, and make it much easier to decide the question now presented, than if it had been sprung upon us before any construction had been put on the act "To abolish imprisonment for debt."

It is decided by *McKay* v. *Ray*, that the case of a non-resident debtor does not come within the proviso set out in sec. 2 of the Act of 1866–'67. The next question is, does the 1st section of that Act embrace the case of a debtor, whose property has been seized by attachment? The enactment is, "From and after the passage of this Act, it shall not be lawful to arrest or imprison any person upon an original writ for debt, " &c. It is clear that the expression, " *original writ* " is not used in the sense given to it in the English books, for there it means a writ issuing out of the Court of Chancery in order to institute a suit in some one of the Courts of general jurisdiction, to-wit: the Court of King's Bench, Common Pleas, or Exchequer, and to summon the party to appear, &c , 3 Bl. Com.

The " original writ " has become obsolete in England, and was never used in this State; so we must take the Act to mean, " *the mesne process* " by which a party is compelled to appear and answer an action. In the King's Bench this was by *capias ad respondendum*, in the Common Pleas it was by attaching the property. Upon entering an appearance the defendant was required to put in bail to the action, or go to jail. In this State the mesne process was a *capias ad respondendum*, which is styled in the Act of 1866–'67 *the original writ.* Under it the Sheriff arrested the defendant, took *bail to the writ* to compel appearance, and converted it into " bail to the action, " by assigning the bail bond.

The object of the attachment, authorized by Rev. Code, ch. 7 (which is usually called an *original* attachment, so bringing it within the words " *original writ* for debt,") .was to give a remedy when the *capias ad respondendum*, the ordinary process, could not be served because " the defendant was a non-resident, or concealed himself, " &c. Th's was effected by seizing the property of the debtor, so as to compel him to appear and *give bail to the action :* in which case, the object being accomplished, the property was discharged and restored to the debtor, in like manner as the bail below taken under mesne process (in the King's Bench)

and the property attached under the mesne process (in the Common Pleas) was discharged by appearance and giving. bail *to the action.* So it is manifest that the writ of attachment authorized by the Rev. Code, ch. 7 is only a substitute for the ordinary process, to· wit: a *capias ad respondendum* by which to compel a party to appear and give bail to the action; and that upon appearance and giving bail he stood on the same footing, whether brought in by *capias* or by attachment.

The effect of the Act of 1866–'67, in the view we are now taking of it, is to abolish the ordinary process by *capias* for debt, and put in its place a *summons.* If the defendant does not appear, the plaintiff takes judgment by default, and, under *fieri facias,* sells his property. If the defendant does appear, he is allowed to enter his pleas and defend, without giving *bail to the action.* It follows as a necessary consequence, that the Act has the further effect of so modifying the process of original attachment (which, as we have seen, is only a substitute for the process by *capias*) as to allow it to serve the purpose only of compelling the defendant to appear. If he does not appear, the plaintiff takes judgment by default and sells his property; if he does appear, he is allowed to enter his plea without giving bail to the action. For, as was forcibly argued by Mr. Bailey, why give bail to the action? *Cui bono?* for the bail are instantly entitled to have an *exoneretur* entered on the bail bond, inasmuch as the principal, if brought into Court and surrendered, could not be imprisoned for the debt, and the plaintiff has had the benefit of his attachment, by compelling an appearance, so as to enable him to proceed to judgment.

The reply made by Mr. Merrimon is, If the bail should bring the non-resident debtor into Court and surrender him, the plaintiff could then enter a non-suit, and take out another writ; and by making the affidavit, under the proviso in the 2nd section, that the debtor " was *about to remove,*" &c., which he would then be able to do, could have a *capias ad respondendum,* and force him to give bail to the action.

HOLMES *v.* SACKETT AND OTHERS.

In other words, the first action is not for the purpose or under the expectation of getting judgment; but to force the debtor to come into the State, and give the creditor a chance to take a better hold of him, in a second action.

There is no principle of law to support such a practice, and it would be a violation of all principle for the Courts to give countenance to it.

It is asked, What is a creditor to do ?  A non-resident debtor, if not required to give bail, may enter his pleas and contest the cause of action and then remove his property while the action is pending !  We can only say, it is the province of the Courts to expound the laws, not to make them.

His Honor erred in declining to allow the defendants to enter their appearance by attorney and make defense, without a replevin bond.

This must be certified.

PER CURIAM.                    There is error.