HENRY H. TATE, v. JOHN L. MOREHEAD et al.

Where an original attachment issued, and a summons of garnishment is served upon a party, who dies before the return day of process, his administrators cannot be required to answer said garnishment. In such a proceeding, the garnishee is required to answer upon oath whether he is indebted to the absconding debtor, and if so, how much ? This being peculiarly within his own knowledge, the action cannot be prosecuted against his representatives.

History of the different statutes at Common Law and of the enactments in this State, by which actions might be revived and carried on by, or against, the representatives of a deceased party—and in what cases the maxim *actio personalis moritur cum persona* does not apply.

*Welch* v. *Gurley*, 2 Hay. 334, cited and approved.

Original attachment, tried before *Tourgee, J.,* at Spring Term, 1871, of GUILFORD Superior Court.

The plaintiff issued an attachment against one James W. Burrows, for a debt due, and owing by the said Burrows, to plaintiff, and returnable to Fall Term, 1866, of the Superior Court of Law of Guilford County, and a garnishment against the late Hon. John M. Morehead.

At the return term of said process, the Sheriff returned the same endorsed "Executed May the 8th, 1866, by summoning John M. Morehead as garnishee."

At the return term of the attachment and garnishment, the death of Mr. Morehead was suggested of record, and an order made that a *scire facias* issue to John L. Morehead, J. A. Gray, and J. T. Morehead, his administrators, commanding them to appear at the next term thereof, and show cause why they should not answer the said attachment, which was served on their intestate.

The defendants, as administrators of J. M. Morehead, for answer to the *scire facias*, answered that their intestate having died before the return day of said garnishment, they were not compellable, by law, to answer the summons of garnishment.

The plaintiff moved for conditional judgment, which was refused by the Court.

His Honor, upon consideration, adjudged that the defendants are not compellable to answer to the garnishment served on their intestate, and are hereby discharged from making answer thereto, from which the plaintiff appealed.

*Mendenhall* and *Scott & Scott* for plaintiff.

1. No action, suit or *other proceeding,* of whatever nature, brought to recover money, property, &c., or to have relief of any kind whatever, &c., shall abate by reason of the death of either party. See Rev. Code, chap. 1, sec. 1.

2. An attachment served in the hands of the garnishee, J. M. Morehead, as a debtor, *is substantially an action at law by the defendant Burrows,* in the attachment, against Morehead, the garnishee; and as the said Burrows could in an action against Morehead, upon his death, have revived a suit against his representatives, so can the present plaintiff revive this action against said representatives. The two cases are strictly analogous: See *Patton* v. *Smith,* 7 Ire., 438; *Parker* v. *Scott,* 64 N. C. 118.

3. The service of an attachment in the hands of a garnishee, creates a *lien* on the debt, or property, in his hands, or due by him to the debtor. See *Tindell* v. *Wall,* Bus. 3. Suppose in the case of *Parker* v. *Scott,* 64 N. C. R., 118, the summons had been served on Bledsoe at 8 o'clock *personally,* and *he had died the next day,* would the lien created by the summons have been lost to the plaintiff? We think it certainly would not. It would have been a vested right, which could not have been divested by the death of the garnishee.

4. The garnishee must answer according to his ability and information, and so we think his administrator must; and if the administrator cannot, from want of knowledge or information, answer satisfactorily, or shall make " such a statement of

facts that the court cannot proceed to give judgment thereon, an issue shall be made up," &c. See Rev. Code chap. 7, sec. 9. Of course no judgment can be had against the administrator which could not have been had against the deceased garnishee. But the administrator only stands in his stead and represents him, and is liable in the same manner and to the same extent that the intestate was. *Russell* v. *Hinton,* 1 Mur. 468, *Gee* v. *Warwick,* Mar. & Hay. 49. Ibid 99. Ibid 544.

6. But the representatives of the garnishee insist—we presume they will here as they did below—that they cannot answer or plead, and if they did so, might be forced to commit a *devastavit,* and for this position rely upon the case of *Welch* v. *Gurley,* Mar. & Hay. 510. How does that case differ from this? In that the garnishment issued against the administrator and not against his intestate in his life time. Again, we submit that is not good authority and has been overruled; the administrator has the right to plead any plea whatever. See *Russell* v. *Hinton,* 1st Mur. 468, also, *Cowles* v. *Oaks, Adm.* 3 Dev. 96. Again, this case says there can be no oyer. In this is error. See Bouv. L. D. garnishment 555, and Brook's Abridgment, garnishee and garnishment. Again, they say in *Gee* v. *Warwick,* Mar. and 2 Hay. 644, that heir or devisee can answer; if so, why cannot representatives? They will be as able to answer as the others.

*Dillard & Gilmer,* for defendants.

PEARSON, C. J. The proceeding was commenced under the old mode of procedure, and must be considered without reference to C. C. P.

" *Actio personalis moritur cum persona* " is a maxim of the common law. The action abates by the death of either plaintiff or defendant. When the matter originated in *contract,* the *cause of action* still existed; and another original writ could be purchased, and another action brought by or against the executor or administrator of the party dying, except in the

actions of account and debt on simple contract, for the reason that the subject of the action was peculiarly within the knowledge of the original parties to the contract, which entitled the defendant to his "wager of law." 3. ed. 3. ch. 7, "actions may be brought by executors or administrators for injuries to personal property, when the estate of the one party has been increased, and that of the other diminished, by such wrongful act. So, as the law then stood, *all actions abated* by the death of either sole plaintiff or sole defendants; but for matters *ex contractu* and for matters *ex delicto*, arising out of an injury to personal *property*, an action might be brought by or against the executor or administrator; and the fact that an action had or had not been commenced between the original parties, was of no significance; that action was dead, and the question depended upon the right of the personal representative to institute a new one.

To remedy the inconvenience of the *abatement of actions*, and to save the expense of a new action, by or against the executors or administrators of a party dying, it is provided in 17 Car. II, ch. 8. sec. 1. "in all actions the death of either party between the *verdict* and *the judgment*, shall not be alleged for erorr, so as such judgment be entered within two terms after such verdict;" and by 8. and 9 Will. III ch. 11 sec. 6.

In all actions to be commenced in any Court of record, if the plaintiff or defendent happen to die, after interlocutory, but before final judgment, the action shall not abate by reason thereof; *if such action might be originally prosecuted or maintained by or against the executors or administrators of the party dying.* The executors or administrators of the party dying may be brought in by *scire facias*, and the case proceeded in by inquiry of damages and final judgment. 2 Saunders, note 72. K. L.

The remedy is further extended by our statute, 1786: "It shall be lawful for the heirs, executors or administrators, to carry on every suit or action in Courts, after the death of either

plaintiff or defendant, and every such suit or action may be proceeded in by application of the heirs, executors or administrators of either party." Rev. Stat. ch. 1. sec. 1, (abatement.) Construing this statute by the settled rule, that general words are to be confined to the mischief which it was the intention to remedy, its operation is, beyond question, confined to suits and actions, which might be originally prosecuted or maintained by or against the heirs, executors or administrators of the party dying. In other words, the object being to prevent the inconvenience of the abatement of suit and action; the statute cannot, *incidentally*, have the effect of allowing further proceedings in actions or suits, which could not have been originally prosecuted or maintained by or against the heirs, executors or administrators of the party dying. For instance: an action of slander could not be proceeded in, by or against the personal representative of a party dying, because it had been commenced in the life time of the parties. For had it been the intention to make a change so fundamental, the purpose would have been expressed in direct terms.

The act of 1786, is re-enacted in the Rev. Code, ch. 1, sec. 1, (abatement,) in terms more amplified, but having the same legal effect; care is taken to " except suits for penalties and for damages merely vindictive;" showing the construction that was put on the act of 1786, and excluding the idea of an intention to extend the remedy beyond the mischief. But on the contrary, to confine the general words " actions, suits, bills in equity, or information in the nature of a bill in equity, or other proceeding of whatever nature," to cases, when the proceeding might have been originally instituted by or against the heirs, executors or administrators of the party dying. The express words of the exception being used by way of example merely, and not as excluding other cases of a similar nature and falling under the same principle. Broom's Leg. Max. 638. Suits for penalties and for damages, merely vindictive, we have seen, would have been excluded by construction from

the operation of the general words, as going beyond the mischief; so, the express exception, otherwise than as an example, falls under the rule, "an expression which merely embodies, that which would in its absence have been implied by law, is altogether inoperative." Ibid. 494.

For illustration, an action in the name of the Attorney General, against a person for usurping an office, setting out the name of the person rightfully entitled to the office, and demanding a surrender of the office, and an account of the fees and emoluments Code Civil Procedure, Section 369. The defendant dies, after summons served. The proceeding is at an end: For, although embraced by the general words of the statute, Rev. Code, ch. 1, s. 1, it is not within the mischief, as the proceeding could not have been originally commenced against the executor or administrator, of the alleged usurper of the office; for the proceeding is special in its nature, and can only be brought against the usurper in his life time. The cause of action does not survive, and the account for the fees and emoluments being a mere incident, falls with the principal. For the same reason that the action *quare impedit,* abates by the death of the incumbent of the office and cannot be proceeded in against his personal representative, inasmuch as he is not liable to an original proceeding of that kind. To apply this learning to our case, the proceeding by attaching a debt due to an absconding debtor by garnishment, in the hands of one, supposed to be indebted to him, for the purpose of compelling an appearance, is special in its nature, the garnishee is required to answer upon oath, whether he is indebted to the absconding debtor, and if so, how much? This is peculiarly within his knowledge, and for that reason, the proceeding like the action of account and of debt on simple contract, cannot be prosecuted or maintained against an executor or administrator. This is settled; (*Welch* v. *Gurley,* 2 Haywood, 334,) and such has ever since been taken to be the law; consequently upon the death of John M. Morehead, the proceeding abated, and

TATE, *v.* MOREHEAD, *et al.*

cannot be proceeded in, after his death, against his administrators, as they could not have been originally proceeded against, by the process of garnishment.

The suggestion that, by the service of the garnishment upon J. M. Morehead, in his life time, the plaintiff had acquired a lien on the debt due by him to Burrows, which was a "vested right" that could not be lost by his death, will be seen to have nothing to rest on, by adverting to the principles above set out. The plaintiff had a lien on the debt to compel the appearance of the defendant in the action; but since the act of 1866–67, the defendant may replevy and plead without giving a replevy bond. *Holmes* v. *Sackett, et. al.,* 63 N. C. 58. So that the idea of a "vested right," is out of the question, and the inconvenience or hardship, is nothing like that of a plaintiff in an action of slander, who has what is called a "vested right" in the bail bond, when if the defendant happens to die before final judgment, all is gone by the *abatement of the action.*

We concur with his Honor. Judgment affirmed.

PER CURIAM.